TIFFANY S. BARNEY, ESQ.
Nevada Bar No. 9754
**ANTHONY L. BARNEY, LTD.**
3317 W. Charleston Blvd., Suite B
Las Vegas, NV 89102
Telephone: (702) 438-7878
Facsimile: (702) 259-1116
*Attorney for Absolute Collection Services, LLC,*
*Agent for Washington & Sandhill Homeowners*
*Association*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WASHINGTON & SANDHILL HOMEOWNERS ASSOCIATION, a Nevada non-profit corporation,<br><br>Plaintiff<br><br>v.<br><br>BANK OF AMERICA, N.A., dba BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP, a national corporation; SHAUN DONOVAN, SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON, D.C. 20410, a government entity; DOES I through X; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>Defendants. | Case No.: 2:13-cv-1845<br><br>**COMPLAINT FOR:**<br>1. **DECLARATORY RELIEF [28 U.S.C. §§ 2201, 2202]**<br>2. **QUIET TITLE [28 U.S.C. § 2409a]**<br>3. **SLANDER OF TITLE** |

## COMPLAINT

Plaintiff, WASHINGTON & SANDHILL HOMEOWNERS ASSOCIATION, by and through its agency relationship with ABSOLUTE COLLECTION SERVICES, LLC, ("Absolute"), whose attorneys are of the law firm of ANTHONY L. BARNEY, LTD., hereby alleges and complains as follows:

1

## PARTIES

1. Plaintiff, WASHINGTON & SANDHILL HOMEOWNERS ASSOCIATION, ("Plaintiff"), is a Nevada Non-Profit Corporation and was and is at all times mentioned herein registered to do business in the State of Nevada, County of Clark.

2. Plaintiff is a common-interest community or homeowners' association as defined under NRS 116.011 and the property commonly known as 912 Swiss St., Las Vegas, NV 89110 ("Subject Property") is located in Plaintiff's association.

3. Upon information and belief, Defendant, BANK OF AMERICA, N.A., dba BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS ("Bank of America") is a national corporation who merged with, was the successor by merger, and/or did business through a subsidiary limited partnership who was and is at all times herein doing business in or registered to do business in the State of Nevada, County of Clark.

4. Upon information and belief, Defendant, SHAUN DONOVAN, SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON, D.C., is the secretary of or is a government agency doing business in or registered to do business in the State of Nevada, County of Clark.

5. Upon information and belief, DOES I through X, were and are at all times mentioned herein resident(s) of the State of Nevada, County of Clark and were owners, trusts, trustees, fiduciaries and/or agents that held an ownership interest, security interest, lien interest, or other interest in or against the Subject Property.

6. Upon information and belief, ROE BUSINESS ENTITIES I through X, are business entity(ies) doing business in or registered to do business in the State of Nevada, County of Clark and were owners, trustees, fiduciaries and/or agents that held an ownership interest, security interest, lien interest, or other interest in or against the Subject Property.

7. ROE BUSINESS ENTITIES could include, but are not limited to, the United States Department of Housing and Urban Development, Bank of America, N.A., BAC Home Loans Servicing, LP.

8. That the true names and capacities, whether individual, trust, corporate, associate or otherwise of Defendants named herein as DOES I through X, inclusive, and ROE BUSINESS ENTITIES I through X, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names and Plaintiff will ask leave to amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiff believes that each Defendant named as a DOE or ROE has caused and/or contributed to the claims and damages as Plaintiff has herein alleged.

9. All Defendants mentioned in this section shall be referred to collectively as "Defendants."

**VENUE AND JURISDICTION**

10. The Court has proper jurisdiction pursuant to 28 USC § 1346(f), because the US Government is a Defendant in this matter.

11. The occurrences, events, and transactions that took place as described herein occurred in Clark County, Nevada.

12. Venue and jurisdiction are proper in the District of Nevada.

## GENERAL ALLEGATIONS

13. The allegations contained in the preceding paragraphs of this Complaint are incorporated herein by this reference

14. A Declaration of Conditions, Covenants and Restrictions and Grant and Reservations of Easements for Washington & Sandhill Homeowners Association ("CC&Rs") was recorded On November 30, 1998, which requires the payment of homeowners' assessments by each owner within the association.[1]

15. Almost ten years later, a deed of trust was recorded on or around May 1, 2008 with Indymac Bank FSB as the beneficiary.[2]

16. Indymac Bank FSB had notice pursuant to the CC&Rs and NRS 116.3116 that Plaintiff could foreclose on a lien for assessments that were not paid by the unit owner before it lent money for the purchase of the Subject Property.

17. Emiliano Renteria and Martha Renteria ("the Renterias"), the mortgagors and prior owners of the Subject Property, then became delinquent in their homeowners' assessments pursuant to the CC&Rs and NRS 116.3116

18. Therefore, Plaintiff recorded a lien for delinquent assessments on March 3, 2010, which was then provided to The Renterias.[3]

19. The deed of trust was later assigned to Bank of America's subsidiary or BAC Home Loans Servicing LP ("Bank of America"), and the assignment was recorded on or around April 21, 2010.[4]

---

[1] See Article III of the CC&Rs a true and correct copy which has been attached hereto and incorporated herein as Exhibit 1.
[2] See Deed of Trust, a true and correct copy which has been attached hereto and incorporated herein as Exhibit 2.
[3] See Notice of Delinquent Assessment (Lien) with evidence of certified mailing, a true and correct copy which has been attached hereto and incorporated herein as Exhibit 3.

4

20. The HOA then recorded a Notice of Default and Election to Sell ("NOD") on April 20, 2010 and sent it to all parties pursuant to NRS 116.31163.[5]

21. The HOA then sent a Notice of Trustee's Sale on or around June 22, 2011 to all appropriate parties pursuant to statute.[6]

22. The sale date of the property was postponed on three occasions.

23. The HOA then sent a second Notice of Trustee's Sale on or around March 2012 to all appropriate parties pursuant to statute.[7]

24. The HOA provided notice to Bank of America that it intended to sell the property as a result of the lien for delinquent assessments, but Bank of America did nothing to protect its interest in the Subject Property.

25. Bank of America did not satisfy Plaintiff's super priority lien to protect its security interest in the Subject Property.

26. Plaintiff held its foreclosure auction on May 23, 2012.

27. Plaintiff credit bid at the auction and the Trustees Deed Upon Sale evidencing the purchase and transfer of the Subject Property was recorded on May 30, 2012.[8]

28. Pursuant to NRS 116.3116(2), Plaintiff had a lien that was prior to a first security interest "to the extent of the assessments for common expenses…during the 9 months immediately preceding institution of an action to enforce the lien" ("super priority lien")

---

[4] See Assignment of Deed of Trust, a true and correct copy which has been attached hereto and incorporated herein as Exhibit 4.
[5] See Notice of Default and Election to Sell with evidence of regular and certified mailings, a true and correct copy which has been attached hereto and incorporated herein as Exhibit 5.
[6] See Notice of Trustee's Sale with certified mail receipts, a true and correct copy which has been attached hereto and incorporated herein as Exhibit 6.
[7] See Notice of Trustee's Sale with certified mail receipts, a true and correct copy which has been attached hereto and incorporated herein as Exhibit 7.
[8] See Trustee's Deed Upon Sale, a true and correct copy which has been attached hereto and incorporated herein as Exhibit 8.

29. When Plaintiff held its foreclosure auction on its super priority lien, it extinguished the first security interest of Bank of America.

30. Despite the extinguishment of Bank of America's first security interest, Bank of America then held a purported foreclosure auction after the Plaintiff had already foreclosed on its super priority lien.

31. Bank of America credit bid and/or purchased its interest at its purported foreclosure auction of the Subject Property.

32. Bank of America recorded a purported Trustee's Deed Upon Sale on or around July 9, 2012 to evidence the purported foreclosure of its already extinguished interest.[9]

33. A few months later, Bank of America curiously rescinded the Trustee's Deed Upon Sale on January 3, 2013 and provided purported title to the Renterias, the prior homeowners, despite the fact that the HOA was still the title owner of the property.[10]

34. Then, Bank of America held another purported foreclosure sale of the property on or around May 10, 2013 at which time the Subject Property purportedly reverted back to Bank of America by credit bid.[11]

35. A Trustee's Deed Upon Sale was recorded for this purported transfer.[12]

36. Shortly thereafter, Bank of America then provided a purported Grant Deed to the Secretary of Housing and Urban Development of Washington, D.C. 20410 ("HUD").[13]

---

[9] See purported Trustee's Deed Upon Sale, a true and correct copy which has been attached hereto and incorporated herein as Exhibit 9.
[10] See Notice of Rescission, a true and correct copy which has been attached hereto and incorporated herein as Exhibit 10.
[11] See Trustee's Deed Upon Sale, a true and correct copy which has been attached hereto and incorporated herein as Exhibit 11.
[12] Id.
[13] See Grant Deed, a true and correct copy which has been attached hereto and incorporated herein as Exhibit 12.

37. The purported Grant Deed was recorded on June 10, 2013 with the Clark County Recorder's Office.[14]

38. HUD has now taken steps to assert an ownership interest in the Subject Property.

39. Because of Bank of America's continuous actions that clouded Plaintiff's title, Plaintiff was unable to take possession or control of the Subject Property which it owned.

40. After HUD became an alleged owner on or around June 2013, Plaintiff has alerted Bank of America and HUD that it has an ownership interest in the Subject Property by reason of its prior lien foreclosure sale.

41. Plaintiff has requested payment of its ownership interest from Defendants who are clouding Plaintiff's title.

42. It is unknown if HUD is currently collecting rental income, but if it is collecting rent, it has done so to the exclusion of Plaintiff, who is the rightful owner of the Subject Property.

43. Plaintiff has continued to request payment from Defendants in an effort to avoid a quiet title action with little or no response from Defendants.

44. Plaintiff has not sold, encumbered, leased or otherwise disposed of the Subject Property that it owns.

45. Bank of America did not have a valid security interest in the home, because it had already been extinguished by Plaintiff's prior foreclosure; therefore, HUD does not have a valid title interest in the home, but is possessing and exercising dominion and control over the Subject Property to the exclusion of Plaintiff.

---

[14] Id.

46. There are competing interests to the Subject Property, which must be resolved through this matter.

### FIRST CLAIM FOR RELIEF
### Declaratory Relief [28 U.S.C. §§ 2201, 2202]
### (All Defendants)

47. The allegations contained in the preceding paragraphs of this Complaint are incorporated herein by this reference.

48. 28 USC § 2201 and 2202 allows for any court of the United States to declare the rights and other legal relations of any interested party seeking such declaration.

49. Also, under Nevada law, NRS 30.040 allows for a party, who has a contract or other writing whose rights are affected by a statute, to have determined any question arising under a statute and obtain a declaration of rights thereunder.

50. Herein, Plaintiff possesses a Trustee's Deed Upon Sale from a validly executed lien foreclosure pursuant to NRS 116.31162 through NRS 116.31168, but subsequent parties are invalidly claiming ownership.

51. Pursuant to NRS 116.3116, an association has lien priority over a first security interest "to the extent of the assessments for common expenses…during the 9 months immediately preceding institution of an action to enforce the lien"; therefore, if the holder of a first security interest does not satisfy an association's super priority lien and an association forecloses on its super priority lien pursuant to NRS 116.31162 through NRS 116.31168, then the foreclosure of the association's lien will extinguish a first security interest.

52. Plaintiff requests that this court declare that pursuant to NRS 116.3116, Plaintiff's lien for delinquent assessments had priority over Bank of America's first security interest "to

the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien."

53. Plaintiff further requests that this court declare that Bank of America's first security interest recorded against the Renteria's title ownership was extinguished as a result of the foreclosure of the Plaintiff's super priority lien on or around May 23, 2012, because Bank of America failed to satisfy Plaintiff's super priority lien before Plaintiff's foreclosure.[15]

54. Plaintiff further requests that this court declare that the subsequent foreclosure held by Bank of America was invalid.

55. Because Bank of America's foreclosure was invalid, Bank of America could not have obtained valid title through credit bid, and Plaintiff requests the court declare the same.

56. Plaintiff requests this court declare that Bank of America did not obtain title at its purported foreclosure sale.

57. Without valid title, Bank of America did not have the ability or authority to transfer any purported interest by Grant Deed to HUD.

58. Plaintiff requests that this court declare that the purported transfer between Bank of America and HUD is invalid.

59. Plaintiff has made demands for purchase of its title interest from Bank of America and HUD's representatives in order to avoid the quiet title action with little or no response.

---

[15] See Exhibit 7.

60. A justiciable controversy exists because Plaintiff and Defendants are making claims and/or asserting rights to the Subject Property, which are adverse to each other.

61. More particularly, the controversy is such that Plaintiff received title ownership from a validly executed foreclosure sale on the association's lien, while HUD is asserting an alleged ownership by transfer from Bank of America whose security interest had been extinguished at Plaintiff's foreclosure sale.[16]

62. These claims or rights have not been resolved.

63. Plaintiff has a legally protectable interest because it wishes to exercise possession or control over the Subject Property to collect rental income and/or sell the property in which it has an ownership interest, but HUD is alleging ownership in the Subject Property.

64. This issue is ripe for judicial determination, because two parties have competing claims to the Subject Property, which have not been resolved and is currently affecting the ownership rights of Plaintiff to the Subject Property.

65. Plaintiff requests that this Court declare the claims and rights of the Plaintiff to the Subject Property.

66. Also, Plaintiff requests that this court declare that Plaintiff is a proper, rightful owner of the Subject Property because of its proper foreclosure before Bank of America's purported foreclosure of its extinguished first security interest.

67. Plaintiff also requests that this Court declare Plaintiff's right, as a title owner, to collect and recover any rental income currently and/or previously collected or received by the Defendants, if any.

---

[16] See Exhibit 7 and 11.

68. As a result of this claim, it has become necessary for the Court to declare that Plaintiff is a proper, rightful owner of the Subject Property and adjudicate Plaintiff's respective rights to the Subject Property.

69. It has become necessary for Plaintiff to engage the services of an attorney to commence this action and Plaintiff is, therefore, entitled to attorney's fees and costs for being forced to file the present action.

70. Upon information and belief, declaratory relief is appropriate in this matter and Plaintiff should be reimbursed its attorney fees and costs pursuant to NRS 30.120 for the court's declaration of the extinguished status of Bank of America's first security interest pursuant to NRS 116.3116, and the court's determination of Plaintiff rights and/or claims to Subject Property in this matter.

### SECOND CLAIM FOR RELIEF
### Quiet Title [28 U.S.C. §2409a] and Injunctive Relief
### (Defendant HUD)

71. The allegations contained in the preceding paragraphs of this Complaint are incorporated herein by this reference.

72. 28 U.S.C. § 2409a(a) allows for this court to adjudicate disputes relating to title of property.

73. Plaintiff possesses an ownership interest in the Subject Property pursuant to its lawfully conducted trustee's sale, which extinguished Bank of America's first security interest by virtue of its lien priority over Bank of America's first security interest pursuant to NRS 116.3116.[17]

74. Plaintiff's title interest is unencumbered by any mortgage or security interest.

---

[17] See Exhibit 7.

11

75. Plaintiff has never been divested of its ownership interest in the Subject Property by sale or otherwise.

76. One or more Defendants have claimed and/or claim an interest in the Subject Property.

77. Bank of America has recorded numerous documents against the Subject Property regarding ownership, including, but not limited to, at least two Trustees Deed Upon Sale for the Subject Property.

78. Bank of America's activity has created a cloud on title from approximately July 2012 when the first deed of trust was recorded until the present.

79. Currently, HUD has caused to be recorded a Grant Deed professing to hold an ownership interest in the Subject Property.[18]

80. HUD's alleged ownership interest was purportedly obtained from Bank of America, who did not have a valid security interest in the home, because it had already been extinguished by Plaintiff's lien foreclosure.

81. Therefore, HUD does not hold valid title to the Subject Property.

82. Plaintiff holds valid title to the Subject Property by virtue of its lien foreclosure, which occurred prior to the Bank of America's purported foreclosure.

83. Therefore, title must be quieted to reflect that Plaintiff is the proper, rightful owner of the Subject Property and HUD is not a proper owner of the Subject Property.

84. Upon information and belief, HUD has already taken possession of the Subject Property and is currently residing therein and/or collecting rental income from the Subject Property to the exclusion of Plaintiff.

---

[18] See Exhibit 11.

85. Plaintiff is entitled as a title owner of the Subject Property to possess the Subject Property and/or receive the rental income from the Subject Property.

86. Plaintiff is currently being irreparably harmed and continues to be irreparably harmed by its inability to possess the Subject Property and/or receive rental income from the Subject Property as a result of Defendant's unlawful possession of the Subject Property.

87. The harm being caused Plaintiff will not cease unless and until an injunction is granted.

88. Third parties will not be harmed by the grant of an injunction against Defendants.

89. The public or unit owners of the association will benefit from the injunction, because Plaintiff will be able to possess the property, sell its ownership interest and/or collect rental income from the unit so the other unit owners' assessments do not increase and corresponding association services do not decrease.

90. On the basis of the facts described throughout this complaint, Plaintiff has a reasonable probability of success on the merits of its claim and has no other adequate remedies of law.

91. Plaintiff requests that HUD be enjoined from any and all actions that would decrease the value of the Subject Property and HUD be enjoined from collecting all rental income to the exclusion of Plaintiff.

92. As a result of this claim, it has become necessary for the Court to adjudicate that Plaintiff is a proper, rightful owner of the Subject Property, award quiet title to Plaintiff, and enjoin HUD from reducing the value of the Subject Property and from collecting all rents from the Subject Property to the exclusion of Plaintiff.

93. It has become necessary for Plaintiff to engage the services of an attorney to commence this action and Plaintiff, is therefore entitled to attorney's fees and costs for being forced to file this present action.

94. Plaintiff is also entitled to judgment against Defendants for any and all damages, amounts of rents or other amounts collectible herein with interests thereon pursuant to NRS § 17.130 and/or any other applicable law, damages resulting from Defendants' exclusion of Plaintiff from the Subject Property, and for Plaintiff's attorney's fees and costs incurred herein.

## THIRD CLAIM FOR RELIEF
### Slander of Title (All Defendants)

95. The allegations contained in the preceding paragraphs of this Complaint are incorporated herein by this reference.

96. Plaintiff possesses an ownership interest in the Subject Property pursuant to its lawfully conducted trustee's sale, which extinguished Bank of America's first security interest by virtue of its lien priority over Bank of America's first security interest pursuant to NRS 116.3116.[19]

97. Bank of America received notice of Plaintiff's lien foreclosure sale, but did not satisfy the super priority lien before the lien foreclosure sale.

98. As a result, Bank of America did not have a valid security interest through which it could foreclose.

99. Plaintiff provided notice of its foreclosure sale to Bank of America and recorded a Trustee's Deed Upon Sale on May 30, 2012 with the Clark County Recorder's Office

---

[19] See Exhibit 7.

evidencing its ownership and providing notice to Bank of America that it was the owner of the Subject Property.

100. Despite this notice, Bank of America caused to be recorded a false and misleading Trustee's Deed Upon Sale on July 9, 2012 ("July 9th TDUS") against the Subject Property, indicating that it was purportedly the owner of the property.

101. The July 9th TDUS clouded Plaintiff's title.

102. Bank of America acted in reckless disregard of the false and misleading statements contained in the July 9th TDUS when it was recorded.

103. The July 9th TDUS falsely indicates that Bank of America had an ownership interest in the Subject Property when it did not.

104. Bank of America knew or should have known that at the time it recorded its July 9th TDUS that Plaintiff was the owner of the Subject Property.

105. Bank of America has published these false claims by the recordation of the July 9th TDUS and documents leading up to the July 9th TDUS.

106. Bank of America's action prevented Plaintiff from taking control or possession of the Subject Property.

107. Curiously, Bank of America then rescinded the July 9th TDUS and purportedly provided title to the Renterias, the prior homeowners, although, months prior, Plaintiff had recorded its TDUS providing notice of its ownership in the Subject Property.

108. Then, on May 10, 2013, Bank of America recorded another Trustee's Deed Upon Sale against the Subject Property ("May 10th TDUS"), indicating again that it was purportedly the owner of the property.

109. The May 10th TDUS clouded Plaintiff's title.

110. Bank of America acted in reckless disregard of the false and misleading statements contained in the May 10th TDUS when it was recorded.

111. The May 10th TDUS falsely indicates that Bank of America had an ownership interest in the Subject Property when it did not.

112. Bank of America knew or should have known that at the time it recorded its May 10th TDUS that Plaintiff was the owner of the Subject Property.

113. Bank of America's action prevented Plaintiff from taking control or possession of the Subject Property.

114. Bank of America has recorded numerous false documents against the Subject Property regarding ownership, including but not limited to, the July 9th TDUS and the May 10th TDUS.

115. Bank of America has published these false claims by the recordation of the May 10th TDUS and the documents recorded by Bank of America leading up to the May 10th TDUS.

116. Bank of America's activity has slandered Plaintiff's title from approximately July 2012 until the present.

117. Currently, HUD has caused to be recorded a Grant Deed on June 10, 2013, ("June 10th Grant Deed") professing to hold an ownership interest in the Subject Property.[20]

118. The June 10th Grant Deed further clouds Plaintiff's title.

119. Bank of America and HUD acted in reckless disregard of the false and misleading statements contained in the Grant Deed when it was recorded.

---

[20] See Exhibit 11.

120. The June 10th Grant Deed falsely indicates that HUD has an ownership interest in the Subject Property when it does not.

121. Bank of America and HUD knew or should have known that at the time it the June 10th Grant Deed was caused to be recorded that Plaintiff was the owner of the Subject Property.

122. They have published these false claims by the recordation of the June 10th Grant Deed, despite Plaintiff's notice of ownership in its Trustee's Deed Upon Sale recorded over one year prior.

123. Therefore, the June 10th Deed providing purported ownership to HUD is also a slander to Plaintiff's title.

124. Before the filing of this present action, Plaintiff expended $4,616.45 in attorney fees in its attempts to resolve this slander on Plaintiff's title.

125. Furthermore, Plaintiff's have been prevented from taking possession of the property because of the slander of title and have a loss in rental income from the Subject Property.

126. Since July 2012, Plaintiff has been unable to collect rental income in the amount of $16,000.00 at the fair market rent amount of $1,000.00 a month since July 2012 through the filing of the present action.

127. The costs associated with attempting to collect on the Renteria's delinquent assessments total $3,600.00, which have not been able to be recouped by Plaintiff because of the slander of Plaintiff's title.

128. Defendants have not responded to Plaintiff's request to resolve the title issues, causing Plaintiff to file the current action.

129. It has become necessary for Plaintiff to engage the services of an attorney to commence this action and Plaintiff, is therefore entitled to attorney's fees and costs for being forced to file this present action.

130. Plaintiff is also entitled to judgment against Defendants for any and all amount of the special pecuniary damages suffered or other amounts collectible herein with interests thereon pursuant to NRS § 17.130 and/or any other applicable law, damages resulting from Defendants' slander of title, for Plaintiff's attorney's fees and costs incurred herein.

WHEREFORE, Plaintiff prays for judgment as follows:

1. The Court make all the declarations as requested herein;
2. The Court award quiet title to Plaintiff and adjudicate the respective rights of Plaintiff to the Subject Property as requested herein;
3. The Court enjoin Defendants from reducing the value of the Subject Property and from collecting all rents from the Subject Property to the exclusion of Plaintiff;
4. The Court award damages in excess of $24,000.00 for all claims raised herein against Defendants, including, but not limited to, special pecuniary damages in Plaintiff's slander of title claim of $4,616.45 in attorney fees and $16,000.00 in lost rental income, $3,600.00 in costs that could not be recouped as a result of Defendants' slander of title.
5. The Court award Plaintiff's attorney fees and costs for being forced to file the present action to determine the possible rights and claims of Plaintiff to the Subject Property; and

///

///

6. The Court award such other and further relief as the Court may deem just and proper in the premises.

DATED this 9th day of October, 2013.

Respectfully Submitted,
**ANTHONY L. BARNEY, LTD.**

_____
Tiffany S. Barney, Esq.
3317 W. Charleston Blvd., Suite B
Las Vegas, NV 89102-1835
(702) 438-7878
*Attorneys for Absolute Collection Services, LLC, Agent for Plaintiff, Washington & Sandhill HOA*

**VERIFICATION**

STATE OF NEVADA )
) ss.
COUNTY OF CLARK )

Richard Kaye, on behalf of Absolute Collection Services, LLC, ("Absolute") agent for WASHINGTON & SANDHILL HOMEOWNERS ASSOCIATION, the Plaintiff herein, being first duly sworn, deposes and says that he makes this verification for the reason that Absolute is the agent for Plaintiff, and has been authorized by Plaintiff to commence this action against Defendants. He verifies that Plaintiff and Absolute are within the jurisdiction of the County of Clark, State of Nevada; and he has read the above and foregoing Complaint and knows the contents thereof. Absolute is informed and believes the contents stated in the Complaint and upon those allegations based on information and belief believes the same to be true.

DATED this 2 day of October, 2013.

_____
Richard Kaye, Absolute Collection Services, LLC
Agent for Plaintiff Washington & Sandhill HOA

SUBSCRIBED and SWORN to before me this 2 day of October, 2013.

_____
Notary Public in and for said County and State

KELLY MITCHELL
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 7-10-2016
Certificate No: 08-7504-1

20