ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
STEVEN G. SHEVORSKI, ESQ.
Nevada Bar No. 8256
AKERMAN LLP
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144
Telephone:    (702) 634-5000
Facsimile:    (702) 380-8572
Email: ariel.stern@akerman.com
Email: steven.shevorski@akerman.com

*Attorneys for Bank of America, N.A. and HUD*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WASHINGTON & SANDHILL HOMEOWNERS ASSOCIATION,<br><br>Plaintiff(s),<br><br>v.<br><br>BANK OF AMERICA, N.A, dba BAC HOME LOANS SERVICING, L.P. FKA COUNTRYWIDE HOME LOANS SERVICING, L.P., a national corporation; SHAUN DONOVAN; SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON D.C. 20410, a government entity; DOES I through X; and ROE BUSINESS ENTITIES; I through X,<br><br>Defendants. | Case No.: 2:13-cv-1845-GMN-GWF<br><br>**MOTION TO DISMISS** |

Bank of America, N.A. successor by merger to BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P. (**Bank of America**) and the Department of Housing and Urban Development (**HUD**) provide supplemental briefing on the applicability of U.S. Const. art. IV, § 3, cl. 2 (Property Clause) and U.S. Const. art. VI, cl. 2. (Supremacy Clause).

/ / /

/ / /

/ / /

/ / /

{29399653;1}                                  1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This Court should dismiss HOA's quiet title complaint.  **First**, it is not necessary to analyze federal law to resolve plaintiff's quiet title claim.  HOA waived a claim to the property's title.  HOA recorded two successive assessment liens against Bank of America and HUD's respective interests in the property.  These recordings are irreconcilable with asserting ownership to the property.  **Second**, *United States v. Kimbell Foods, Inc*., 440 U.S. 715 (1979) does not govern this case.  Unlike in *Kimbell*, HUD had no pre-loan ability to research and select its borrower.  Unlike in *Kimbell Foods*, applying state law would subject a federal entity to law that is unsettled and has never been interpreted by the state's highest court.  HUD succeeded to the property's title in the same fashion as in *Secretary of Housing & Urban Dev. V. Sky Meadow*, 117 F.Supp.2d 970 (C.D. Cal. 2000).  The same result should apply.  HUD's interest in the property is protected by the Property Clause.  Dismissal is warranted.

## II.

## DISCUSSION

**A.     HOA Waived its Right to Assert a Quiet Title Claim.**

The Court does not need to reach whether HOA's claim is barred by the Property Clause and the Supremacy Clause of the federal constitution.  NRS § 116.31168(2) provides:

> 2.  **An association may, after recording a notice of default and election to sell, waive the default and withdraw the notice or any proceeding to foreclose**. The association is thereupon restored to its former position and has the same rights as though the notice had not been recorded.

NRS § 116.31168(2) (Emphasis Added).  Chapter 116 does not specify how this act of waiver and withdrawal must be done.  It does not define waiver or withdrawal of the notice. The principles of law and equity supplement NRS Chapter 116.  *See* NRS § 116.1108.

A waiver is the "intentional relinquishment of a known right." *State, Univ. & Cmty. Coll. Sys. v. Sutton*, 103 P.3d 8, 18 (Nev. 2004) (quotation omitted).  HOA waived any claim for quiet title. **First**, HOA's act of recording assessment liens against Bank of America and then HUD's ownership

{29399653;1}                                                                  2

1  interest was intentional.  HOA recorded the liens successively over a period of months.  **Second**,
2  HOA acted with knowledge.  HOA recorded the assessments liens on September 11, 2012 and
3  October 1, 2013, respectively, *after* its supposed May 23, 2012 foreclosure (the basis for its quiet
4  title claim).  HOA's conduct in seeking assessments from Bank of America and HUD is antithetical
5  to an intent to assert title to the property.

6  **B.**     ***U.S. v. Kimbell Foods, Inc.* is Not Applicable.**

7     **(1)     HUD's Interest in the Mortgage was Constitutionally Protected Property.**

8  The United States Constitution provides "The Congress shall have Power to dispose of and
9  make all needful Rules and Regulations respecting ... Property belonging to the United States ...."
10 U.S. Const. art. IV, § 3, cl. 2. Congress' power to dispose of property belonging to the United States
11 is "without limitation." *State of Alabama v. State of Texas*, 347 U.S. 272, 273 (1954).

12 The Supreme Court defines "property" to include "all other personal and real property
13 rightfully belonging to the United States."  *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 331
14 (1936).  When Congress exercises authority under the Property Clause, questions related to "[t]he
15 validity and construction of contracts …, their consequences on the rights and obligations of the
16 parties, the titles or liens which they create or permit, all present questions of federal law not
17 controlled by the law of any state." *United States v. Allegheny Cnty.*, 322 U.S. 174, 183 (1944)
18 (abrogated on other grounds).

19 Federal law controls these issues by virtue of the Supremacy Clause, which provides that
20 "[t]his Constitution, and the Laws of the United States, which shall be made in Pursuance thereof ...
21 shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. "The Supremacy Clause seeks to
22 avoid the introduction of the disparity, confusion, and conflict which would follow if the
23 Government's general authority is subject to local controls." *Rust,* 597 F.2d at 179 (citing *Allegheny*,
24 322 U.S. at 183).

25 A mortgage that the United States has an interest in is property protected by the Property
26 Clause. *Rust v. Johnson*, 597 F.2d 174, 177 (9th Cir. 1979).  Here, the transfer of interest from Bank
27 of America to HUD did not occur until after Bank of America foreclosed. However, this is a
28 distinction without a difference.  As in *Rust v. Johnson*, HUD, through FHA, had an interest in the

{29399653;1}                                3

loan *sub judice* for federal governmental purpose. This federal purpose was nicely explained in *Secretary of Housing & Urban Dev. v. Sky Meadow*. After the lender forecloses, it conveys the property's title to HUD in exchange for an insurance payment from HUD.  117 F.Supp.2d at 973-974.  HUD then sells the properties to help replenish the funds to sustain the federal program.  *Id*.  It makes no difference to the holding in *Sky Meadow* or *Rust v. Johnson* how the federal government takes an interest in mortgage but rather whether it is doing so to fulfill, or in furtherance of, a governmental purpose.

**(2)     This Court Must Fashion the Rule of Decision.**

Congress has not spoken on the issue of whether a non-judicial foreclosure of a homeowner's association assessment lien may extinguish an FHA mortgage.  "When Congress has not spoken, it is up to the "federal courts to fill the [void] ... `according to their own standards.""  *Sky Meadow*, 117 F.Supp.2d at 978 (quoting *United States v. Kimbell Foods, Inc.*, 440 U.S. at 727)

**(3)     *U.S. v. Kimbell Foods, Inc.* is Inapposite.**

*U.S. v. Kimbell Foods, Inc.*, which used state priority rules as a rule of decision does not govern this case.  In *Kimbell*, state law of priority was held to supply the rule of decision applicable to a dispute a dispute between a Small Business Association Guaranteed loan and a private contractual security interest.  The *Kimbell* holding was analyzed by the *Sky Meadow* court:

> In *Kimbell Foods*, the Supreme Court held that in determining which lien takes precedence, state law applies. The Supreme Court reached this conclusion by noting that the Small Business Administration and the Farmer's Home Administration would in no way be hindered by this rule. Among the reasons for its decision, the Court cited the fact that these agencies sponsored voluntary lending programs, that compliance with state law placed no burden on them (as they had already incorporated many aspects of state law in their lending manuals), that they individually negotiated each loan so customization was not a problem, and that the government assumes the risk when it makes individual loans. *Id*. at 729-36, 99 S.Ct. 1448.

*Id*. at 979. The *Sky Meadow* court then distinguished *Kimbell* where a HUD loan was concerned. Unlike *Kimbell*, a private lender's borrower defaulted, the lender foreclosed, HUD ultimately acquired the property and reimbursed the lender for its loss, and the homeowner's association had the ability to sue HUD for assessments.  *Id.*; *see also* 12 USC § 1702.

This case is similar to *Sky Meadow* and not to *Kimbell Foods*. Renteria defaulted on his loan from a lender, the lender foreclosed, and then lender transferred the property to HUD after being reimbursed for its loss from the FHA loan. Similarly, the HOA in this case could have sued Bank of America for 9 months of assessments under NRS §116.3116(7). The HOA could sue HUD now for HOA assessments under 12 U.S.C. §1702.

Unlike *Kimbell Foods*, applying state law as a rule of decision imposes substantial burden on HUD because there is no longstanding Nevada law that governs HOA super priority that will be disturbed here. Using NRS Chapter 116 imposes a substantial burden on HUD and the secured lenders whose loans it insures. NRS §116.3116 has never been interpreted by the state's highest court. NRS §116.3116 leaves key terms undefined such as the term "action," the key term that triggers the nine months of assessments. NRS 116.3116 does not define whether the nine months of assessment is evergreen, or can be satisfied through a one-time payment to the HOA. No court has ever ruled whether a mortgage protection clause, such as exists in this case (*See* **Dkt. 9-26 at pgs. 21-22 of the CC&Rs**), in the HOA's CC&Rs is enforceable by HUD or the first priority mortgagee.

Looking to other state's laws or scholarly authority would not ease HUD's burden. **First**, there are no reported decisions interpreting how HOA super priority functions in a non-judicial state such as Nevada. **Second**, there are no reported decisions interpreting the law of tender and whether the senior mortgagee has an enforceable right to pay the super priority amount prior to the homeowner's association non-judicial foreclosure. **Third**, the scholarly authority that has analyzed the UCIOA takes the view that the super priority only comes into existence after the senior mortgagee forecloses. Boyack, Andrea J., "Community Collateral Damage, A Question of Priorities," Loyola University Chicago Law Journal, p. 99 (Vol. 43, 2011). Nevada's HOA super priority law, and the super priority law of other states, is a mess.

Nevada's ambiguous priority laws scream for a well fashioned federal rule of decision to protect the federal property interest at stake in this case.

**(4)     This Court should Adopt a Rule Requiring Judicial Sales.**

A court when fashioning a federal rule can look to analogous federal statutes for inspiration. *Seagate Tech., LLC v. Dalian China Ex. Int'l Corp.*, 169 F.Supp.2d 1137, 1142 (N.D. Cal. 2001).

Congress enacted 28 U.S.C. § 2410, which permits a plaintiff to judicially foreclose a lien and quiet title against the property of the United States. Subsection (c) requires court supervision and a judicial sale. 28 USC § 2410(c).

The Ninth Circuit in *Rust* was concerned with the lack of protection given to the federal interest in an association's non-judicial foreclosure sale. *Rust*, 597 F.2d at 180. A rule requiring homeowner's associations to proceed judicially ensures protection of the federal interest.

## IV.

## CONCLUSION

HOA waived its right to claim title to the property. Even if it did not, HOA is not elevated to greater power to take the property of the federal government than is denied to the states. A state could not take federal property non-judicially. This Court should fashion a federal rule based on 28 U.S.C. §2410 and require a homeowner's association to use the judicial process to do so. Only a judicial foreclosure will adequately protect the federal interest from erroneous confiscation.

DATED this 15th day of August, 2014.

**AKERMAN LLP**

/s/ Steven Shevorski, Esq.
ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
STEVEN G. SHEVORSKI, ESQ.
Nevada Bar No. 8256
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144

*Attorneys for Bank of America, N.A. and HUD*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th of August, 2014 and pursuant to FRCP 5, I served via CM/ECF and/or deposited for mailing in the U.S. Mail a true and correct copy of the foregoing **MOTION TO DISMISS,** postage prepaid and addressed to:

Tiffany S. Barney, Esq.
Anthony L. Barney, Ltd.
3317 W. Charleston Blvd., Suite B
Las Vegas, NV  89102

*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　　　　　　/s/ *Lucille Chiusano*
　　　　　　　　　　　　　　　　　　　　　An employee of AKERMAN LLP

{29399653;1}

7